**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Jeremy Jackson, individually and of behalf of all others similarly situated, | Civil Case Number: |
| Plaintiff, | **CIVIL ACTION** |
| v. | **CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL** |
| Shore Funding Solutions, Inc.; and DOES 1 through 10, inclusive, | |
| Defendant. | |

Plaintiff Jeremy Jackson (hereinafter, "Plaintiff"), individually and on behalf of all others similarly situated, bring this Class Action Complaint (the "Complaint") against defendant Shore Funding Solutions, Inc. ("Defendant"), and allege, upon personal knowledge as to his own conduct, and upon information and belief as to the conduct of others, as follows:

## INTRODUCTION

1.      Plaintiff brings this Complaint against Defendant to stop Defendant from: (i) violating the Pennsylvania Telemarketer Registration Act; (ii) violating the Telephone Consumer Protection Act, 47 U.S.C § 227, *et seq.* ("TCPA"); (iii) invading Plaintiff's privacy by making unsolicited telemarketing calls to consumers using a pre-recorded and/or artificial voice *without their consent*; (iv) making unsolicited telemarketing calls to consumers registered on the national Do Not Call list; and (v) making unsolicited telemarketing calls to consumers registered on the Pennsylvania Do Not Call List.  Plaintiff seeks injunctive and monetary relief for all persons injured by Defendant's unlawful conduct.

2.      Defendant made several unauthorized phone calls to Plaintiff's cellular phone using an artificial or pre-recorded voice for the purpose of soliciting business from Plaintiff.

3.    The TCPA was enacted to protect consumers from unsolicited and unwanted telephone calls exactly like those alleged in this case.

4.    In response to Defendant's unlawful conduct, Plaintiff seeks an injunction requiring Defendant to cease all unsolicited artificial and prerecorded voice phone calls, and an award of statutory damages to the members of the Classes (defined below) per violation, together with court costs, reasonable attorneys' fees, and treble damages (for knowing and/or willful violations).

## PARTIES

5.    Plaintiff Jeremy Jackson is a citizen of Pennsylvania.

6.    Upon information and belief, Defendant is, and at all times mentioned herein was, a domestic corporation with its principal place of business within the State of New York.

7.    Defendant, is and at all times mentioned herein was, a corporation and is a "person," as defined by 47 U.S.C. § 153 (10).

8.    Plaintiff alleges that at all times relevant herein Defendant conducted business in the State of New York, and within this judicial district.

9.    Whenever in this Complaint it is alleged that Defendant committed any act or omission, it is meant that the Defendant's officers, directors, vice-principals, agents, servants, or employees committed such act or omission and that at the time such act or omission was committed, it was done with the full authorization, ratification or approval of Defendant or was done in the routine normal course and scope of employment of the Defendant's officers, directors, vice-principals, agents, servants, or employees.

## JURISDICTION AND VENUE

10.    This Court has subject matter jurisdiction under 28 U.S.C. § 1331, as this action arises under the TCPA, a federal statute.

11.     The Court has personal jurisdiction over Defendant because it conducts significant business in this District, and the unlawful conduct alleged in this Complaint occurred in, was directed to, and/or emanated from this District.

12.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because the wrongful conduct giving rise to this case occurred in, was directed to, and/or emanated from this District.

## LEGAL BASIS FOR THE CLAIMS

13.     In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry.  In doing so, Congress recognized that "[u]nrestricted telemarketing … can be an intrusive invasion of privacy.…"  Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243 § 2(5) (1991) (codified at 47 U.S.C. § 227).

14.     Specifically, the TCPA restricts telephone solicitations (*i.e.,* telemarketing) and the use of automated telephone equipment.  The TCPA limits the use of automatic dialing systems, artificial or prerecorded voice messages, SMS text messages, and fax machines.  It also specifies several technical requirements for fax machines, autodialers, and voice messaging systems – principally with provisions requiring identification and contact information of the entity using the device to be contained in the message.

15.     In its initial implementation of the TCPA rules, the FCC included an exemption to its consent requirement for prerecorded telemarketing calls.  Where the caller could demonstrate an "established business relationship" with a customer, the TCPA permitted the caller to place pre-recorded telemarketing calls to residential lines.  The new amendments to the TCPA, effective October 16, 2013, eliminated this established business relationship exemption.  Therefore, all pre-recorded telemarketing calls to residential lines and all ATDS calls to wireless numbers violate the TCPA if the calling party does not first obtain express written consent from the called party.

3

16.    As of October 16, 2013, unless the recipient has given <u>prior express written consent</u>,[1] the TCPA and Federal Communications Commission ("FCC") rules under the TCPA generally:

- Prohibit solicitors from calling residences before 8 a.m. or after 9 p.m., local time.

- Require that solicitors provide their name, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which that person or entity may be contacted.

- Prohibit solicitations to residences that use an artificial voice or a recording.

- Prohibit any call or text made using automated telephone equipment or an artificial or prerecorded voice to a wireless device or cellular telephone.

- Prohibit any call made using automated telephone equipment or an artificial or prerecorded voice to an emergency line (*e.g.*, "911"), a hospital emergency number, a physician's office, a hospital/health care facility/elderly room, a cellular telephone, or any service for which the recipient is charged for the call.

- Prohibit autodialed calls that engage two or more lines of a multi-line business.

- Prohibit unsolicited advertising faxes.

- Prohibit certain calls to members of the National Do Not Call Registry.

17.    Furthermore, in 2008, the FCC held that "a creditor on whose behalf an autodialed or prerecorded message call is made to a wireless number bears the responsibility for any violation

---

[1]    Prior express written consent means "an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered." 47 C.F.R. § 64.1200(f)(8).

of the Commission's rules." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act, Declaratory Ruling on Motion by ACA International for Reconsideration*, 23 FCC Rcd. 559, 565, ¶ 10 (Jan. 4, 2008); *Birchmeier v. Caribbean Cruise Line, Inc.*, 2012 WL 7062748 (N.D. Ill., Dec. 31, 2012).

18.    Accordingly, the entity can be liable under the TCPA for a call made on its behalf, even if the entity did not directly place the call.  Under those circumstances, the entity is deemed to have initiated the call through the person or entity.

19.    With respect to misdialed or wrong-number calls, the FCC recently clarified that "callers who make calls without knowledge of reassignment and with a reasonable basis to believe that they have valid consent to make the call should be able to initiate one call after reassignment as an additional opportunity to gain actual or constructive knowledge of the reassignment and cease future calls to the new subscriber." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, FCC 15–72, 30 F.C.C.R. 7961, ¶¶ 71-72 (July 10, 2015).  "If this one additional call does not yield actual knowledge of reassignment, we deem the caller to have constructive knowledge of such." *Id.*  Thus, any second call placed to a wrong number violates the TCPA.

20.    Finally, the TCPA established the National Do-Not-Call list, as well as the requirement that all businesses that place calls for marketing purposes maintain an "internal" Do-Not-Call list ("IDNC list").  The IDNC is "a list of persons who request not to receive telemarketing calls made by or on behalf of that [seller]." *Id.*  The TCPA prohibits a company from calling individuals on its IDNC list or on the IDNC list of a seller on whose behalf the telemarketer calls, even if those individuals' phone numbers are not on the National Do-Not-Call Registry.  *Id.* at § 64.1200(d)(3), (6).  Any company, or someone on the company's behalf, who

calls a member of the company IDNC violates the TCPA.  The called party is then entitled to bring

a private action under the TCPA for monetary and injunctive relief.

## FACTUAL ALLEGATIONS

21.     At all times relevant hereto, Plaintiff was assigned, and was the owner of, a cellular

telephone number ending in -0282 ("Cell Phone").

22.     Plaintiff is the subscriber and sole user of the 0282 Number, and is financially

responsible for phone service to the 0282 Number.

23.     Plaintiff's Cell Phone is not associated with any business.

24.     In a 2003 Report and Order, the FCC made clear that, under the TCPA, wireless

telephone subscribers are presumed to be residential subscribers.

25.     At no time did Plaintiff provide Plaintiff's Cell Phone to Defendant through any

medium.

26.     At no time did the Plaintiff ever enter in a business relationship with Defendant.

27.     Beginning in 2016, Defendant made certain unsolicited telephone calls to

Plaintiff's Cell Phone.

28.     Thereafter, Plaintiff initiated two lawsuits against Defendant seeking relief for the

stop unsolicited robocalls to his Cell Phone.

29.     Plaintiff ultimately entered into a settlement agreement with Defendant to resolve

the same.

30.     Despite agreeing not to call him again, Defendant recently began placing

unsolicited calls to his Cell Phone using an artificial and/or prerecorded voice.

31.     Plaintiff has received many of these unsolicited calls and prerecorded messages.

32.     When Plaintiff listened to the message, Plaintiff was able to determine that it was a

prerecorded message. *See, Rahn v. Bank of Am.*, No. 1:15-CV-4485-ODE-JSA, 2016 U.S. Dist.

6

LEXIS 186171, at *10-11 (N.D. Ga. June 23, 2016) ("When one receives a call, it is a clear-cut fact, easily discernible to any lay person, whether or not the recipient is speaking to a live human being, or is instead being subjected to a prerecorded message.").

33.     That these voice messages were pre-recorded were evident from *inter alia* (a) the fact that each of the pre-recorded voice messages received by the Plaintiff were exactly identical in content, tone and inflection, without even the most minute variation between these messages, (b) the generic content of the voice message, and (c) the tone, cadence and inflection of the voice message, which sounded to the Plaintiff's ears like a pre-recorded message, rather than a personal voice message that was placed personally for the Plaintiff by an individual.

34.     Plaintiff has previously received both pre-recorded voice messages and regular non-prerecorded voice messages, and has experienced the different characteristics and sounds of a pre-recorded voice message as contrasted to an ordinary voice message.

35.      Based on the Plaintiff's own personal experience, the voice messages received from Defendant clearly sounded as if they were pre-recorded voice messages.

36.     In November 2021, Plaintiff received several of these phone calls and the same pre-recorded message offering Plaintiff business funding.

37.     Frustrated that the calls would not stop, Plaintiff eventually interacted with the pre-recorded message in a December 2021 call.

38.     Specifically, Plaintiff pressed the required number to speak with someone so he could identify the source of these harassing, unsolicited telemarketing calls.

39.     After pressing the required number, Plaintiff was connected with a Audi Rivera <arivera@shorefundingsolutions.com> and received an email from her.

40.     All of these aforementioned calls came from different, random telephone numbers that could not be called back, *i.e.* Caller ID Spoofing was being used.

41.     The call that connected Plaintiff to Ms. Rivera displayed the telephone number 828-340-1583 on caller ID, a North Carolina area code, nowhere near where Shore Funding is located.

42.     When this telephone number is called back a message plays that states "the number you are calling is not a working number."

43.     Rather than have its advertised business number displayed on Plaintiff's caller ID, Defendant engaged in an intentional effort to conceal the source of these calls to avoid TCPA claims.

44.     Plaintiff does not have a relationship with Defendant, and has never consented to its calls.

45.     Further, Plaintiff successfully registered his phone number ending in -0282 with the National Do-Not-Call Registry on December 4, 2006.

46.     Nevertheless, Defendant placed multiple calls soliciting its business to Plaintiff on his cellular telephone ending in -0282 as alleged with specificity herein.

47.     Such calls constitute solicitation calls pursuant to 47 C.F.R. § 64.1200(c)(2) as they were attempts to promote or sell Defendant's services.

48.     In addition, Plaintiff successfully registered his phone number ending in -0282 on the Pennsylvania Do Not Call List on August 18, 2016.

49.     Upon receipt of his registration, Plaintiff received the following message from the Pennsylvania Attorney General's email address of noreply@attorneygeneral.gov:

> Thank you for registering your phone number on the Pennsylvania's Do Not Call list. As you know, the Do Not Call list offers citizens the opportunity to avoid the most unwanted telemarketing calls.  Under the law, the list is updated on a quarterly basis, and the telemarketers have 30 days to remove new numbers from their call list once the quarterly list becomes available. Your information has been received, and the updated Do Not Call lists will be available to telemarketers on October 1, 2016.

50.     Nevertheless, Defendant placed multiple calls soliciting its business to Plaintiff on his cellular telephone ending in -0282 as alleged with specificity herein.

51.     Such calls constitute solicitation calls as they were attempts to promote or sell Defendant's services.

52.     Defendant's unauthorized telephone calls harmed Plaintiff in the form of annoyance, nuisance, and invasion of privacy, and disturbed his use and enjoyment of his Cell Phone, in addition to the wear and tear on the phone's hardware (including the phone's battery) and the consumption of memory on the phone.

## LEGAL CLAIMS

53.     Defendant's calls constituted calls that were not for emergency purposes as defined by 47 U.S.C. § 227(b)(1)(A)(i).

54.     Plaintiff did not provide Defendant prior express written consent to receive calls to her cellular telephone utilizing an artificial or prerecorded voice, pursuant to 47 U.S.C. § 227 (b)(1)(A).

55.     All phone calls Defendant made to Plaintiff invaded Plaintiff's privacy and violated 47 U.S.C. § 227(b)(1).

56.     Plaintiff has reason to believe that Defendant has called thousands of wireless telephone customers with prerecorded messages to market its products and services without consent and/or after consumers revoked their consent in a reasonable manner.

57.     In order to redress injuries caused by Defendant's violations of the TCPA, Plaintiff, on behalf of himself and the Classes of similarly situated individuals, bring suit under the TCPA, 47 U.S.C. § 227, *et seq.*, which prohibits certain unsolicited calls to cellular phones and unsolicited marketing calls to phone numbers registered on the DNC.

58. On behalf of Plaintiff and the Class, Plaintiff seeks an award of statutory damages to the Class members, together with costs and reasonable attorneys' fees.

## CLASS ACTION ALLEGATIONS

59. Plaintiffs bring this action pursuant to Rule 23(a), Rule 23(b)(2), and Rule 23(b)(3) of the Federal Rules of Civil Procedure individually and on behalf of the Class, which include:

> No Consent Class: All persons within the United States who received any solicitation/telemarketing telephone calls from Defendant to said person's cellular telephone made through the use of an artificial or prerecorded voice and such person had not previously consented to receiving such calls within the four years prior to the filing of this Complaint.

> Do Not Call Registry Class: All persons in the United States who, from four years prior to the filing of this action through the date of class certification, (1) Defendant called more than one time in the aggregate, (2) within any 12-month period, (3) where the person's telephone number had been listed on the national Do Not Call list for at least thirty days, (4) for a substantially similar reason that Defendant called Plaintiff, and (5) for whom Defendant claims (a) it obtained prior express written consent in the same manner as Defendant claims it supposedly obtained prior express written consent to call Plaintiff, or (b) it did not obtain prior express written consent.

> Internal Do Not Call Class: All persons in the United States who from four years prior to the filing of this action through the date of class certification (1) Defendant called more than one time in the aggregate (2) within any 12-month period, (3) for substantially the same reason that Defendant called Plaintiff.

> Pennsylvania Do-Not-Call violation (hereinafter the "PA DNC Class"): All persons within the United States registered on the Pennsylvania Do-Not-Call Registry, who had not granted Defendant prior express consent nor had a prior established business relationship, who received more than one call made by or on behalf of Defendant that promoted Defendant's products or services, within any twelve-month period, within four years prior to the filing of the complaint.

> Pennsylvania Telemarketer Registration Act violation (hereinafter the "PA TRA Class"): All Pennsylvania citizens, who had not granted Defendant prior express consent nor had a prior established business relationship, who received more than one call made by or on behalf of Defendant that promoted Defendant's products or services, within four years prior to the filing of the complaint.

60. The following individuals are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, their

subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Classes; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against Defendant have been fully and finally adjudicated and/or released. Plaintiff anticipates the need to amend the Class definitions following appropriate discovery.

61.     Plaintiff reserves the right to modify the Class definition as warranted as facts are learned in further investigation and discovery.

62.     Plaintiff and the Class members were harmed by Defendant's acts in at least the following ways: Defendant, either directly or through its agents, illegally contacted Plaintiffs and the Class *via* their cellular telephones by using an artificial or prerecorded voice, thereby causing Plaintiffs and the Class to incur certain cellular telephone charges or reduce cellular telephone time for which Plaintiffs and the Class members previously paid; and Plaintiffs and Class members' privacy was invaded.

63.     The exact size of the Class is presently unknown but can be ascertained through a review of Defendant's records, and it is clear that individual joinder is impracticable.  Defendant made telephone calls to thousands of consumers who fall into the definition of the Classes.

64.     There are many questions of law and fact common to the claims of Plaintiffs and the Classes, and those questions predominate over any questions that may affect individual members of the Classes.

65.     Common questions for the Classes include, without limitation:

    a.     Whether Defendant's conduct violated the TCPA;

b.     Whether Class members are entitled to treble damages based on the willfulness of Defendant's conduct;

c.     Whether Defendant made phone calls to consumers using artificial or prerecorded voice to any telephone number assigned to a cellular phone service;

d.     whether Defendant systematically made multiple telephone calls to Plaintiff and members of the Do Not Call Registry Class;

e.     whether Defendant failed to implement policies and procedures for maintaining a list of persons who request not to be called by Defendant before engaging in telemarketing;

f.     whether Defendant made these calls without prior express written consent; and

g.     Whether Defendant and its agents should be enjoined from engaging in such conduct in the future.

66.     Plaintiff's claims are typical of the claims of the other members of the Class. Plaintiff and the Class sustained damages as a result of Defendant's uniform wrongful conduct during transactions with Plaintiff and the Class.

67.     Plaintiff will fairly and adequately represent and protect the interests of the Class, and have retained counsel competent and experienced in complex class actions.

68.     Plaintiff has no interest antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiff.

69.     This class action is appropriate for class certification because Defendant has acted or refused to act on grounds generally applicable to the Class as a whole, thereby requiring the

Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class, and making final injunctive relief appropriate with respect to the Class as a whole.

70.    Defendant's practices challenged herein apply to and affect the Class members uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Classes as a whole, not on facts or law applicable only to Plaintiff.

71.    This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy given that joinder of all parties is impracticable.

72.    The damages suffered by the individual members of the Classes will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions.

73.    Thus, it would be virtually impossible for the individual members of the Classes to obtain effective relief from Defendant's misconduct.

74.    Even if members of the Classes could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint.

75.    By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Economies of time, effort and expense will be fostered, and uniformity of decisions ensured.

**COUNT I**
**NEGLIGENT VIOLATIONS OF THE TCPA 47 U.S.C. § 227** *et seq.*
*(On Behalf of Plaintiff and The No Consent Class)*

76.    Plaintiff re-alleges and incorporates by reference each preceding paragraph as though fully set forth herein.

13

77.     Defendant made unsolicited and unauthorized phone calls using an artificial or prerecorded voice to Plaintiff's and the Class members' cellular telephones for the purpose of marketing products and/or services to Plaintiff and the Class.

78.     The foregoing acts and omissions of Defendant constitute numerous and multiple violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. § 227, *et seq.*

79.     Defendant made unsolicited and unauthorized calls to Plaintiff for the purpose of marketing products and/or services to the Plaintiff and the Class.

80.     Defendant's conduct invaded Plaintiff's privacy.

81.     As a result of Defendant's violations of 47 U.S.C. § 227, *et seq.*, Plaintiff and the Class are entitled to an award of $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

82.     Plaintiff and the Class are also entitled to and seek injunctive relief prohibiting such conduct in the future.

### COUNT II
**KNOWING AND/OR WILLFUL VIOLATIONS OF THE TCPA 47 U.S.C. § 227 et *SEQ***
***(On Behalf of Plaintiff and The No Consent Class)***

83.     Plaintiff re-alleges and incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

84.     At all relevant times, Defendant knew or should have known that its conduct as alleged herein violated the TCPA.

85.     Defendant knew that it did not have prior express written consent to make these calls, and knew or should have known that it was using an artificial or prerecorded voice in violation of the TCPA.

86.     Because Defendant knew or should have known that Plaintiff and Class Members had not given prior express consent to receive its such prerecorded calls, the Court should treble the amount of statutory damages available to Plaintiff and the other members of the putative Class pursuant to § 227(b)(3) of the TCPA.

87.     As a result of Defendant's violations, Plaintiff and the Class Members are entitled to an award of $1,500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C)

**COUNT III**
**VIOLATIONS OF THE TCPA 47 U.S.C. § 227** *et seq.*
(*On Behalf of Plaintiff and The Do Not Call Registry Class*)

88.     Plaintiff re-alleges and incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein

89.     The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

90.     47 C.F.R. § 64.1200(e), provides that § 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers."[2]

91.     The TCPA provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said

---

[2] Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003) Available at https://apps.fcc.gov/edocs_public/attachmatch/FCC-03-153A1.pdf

regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

92.     Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

93.     Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff and members of the Do Not Call Registry Class received more than one telephone call in a 12-month period made by or on behalf of Defendant in violation of 47 C.F.R. § 64.1200, as described above.

94.     As a result of Defendant's conduct as alleged herein, Plaintiff and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled to receive no less than $500 in damages for each violation, and up to $1,500 in damages, for each violation.

**COUNT IV**
**VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT 47 U.S.C. § 227 *ET SEQ***
*(On Behalf of Plaintiff and The Internal Do Not Call Registry Class)*

95.     Plaintiff re-alleges and incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

96.     Under 47 C.F.R. § 64.1200(d): No person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

(1) Written policy. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.

(2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

(3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the telemarketing call is made, the person or entity on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not-call request. A person or entity making a call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a telemarketing call is made or an affiliated entity.

(4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

(5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.

(6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

47 C.F.R. 64.1200(d)(1)-(6).

97.     The TCPA provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c)(5).

98.     Defendant initiated telephone solicitations to Plaintiff and members of the Internal DNC Class notwithstanding Defendant's failure to implement internal procedures for maintaining a list of persons who request not to be called and/or by implementing procedures that do not meet the minimum standards for initiating telemarketing calls.

99.     Defendant has, therefore, violated 47 U.S.C. § 227(c)(5). As a result of Defendant's conduct, Plaintiff and the other members of the Internal Do Not Call class are each entitled to up to $1,500 for each violation.

### COUNT V
### Violation of the Pennsylvania Telemarketer Registration Act
#### (*On Behalf of the PA TRA Class*)

100.     Plaintiff incorporates by reference all of the above paragraphs of his Complaint as though fully stated herein.

101.     As alleged with specificity herein, Defendant initiated certain outbound telephone calls to Plaintiff and caused spoofed telephone numbers to appear on Plaintiff's Caller Identification

102.     As such, the Defendant violated the Pennsylvania Telemarketer Registration Act, 73 P.S. §§2241 - 2249 ("TRA").

103.     Specifically, Defendant violated §2245.1 "Blocking of caller identification and other telemarketing screening products or services prohibited."

104.    Under §2246, a violation of the TRA is also a violation of the Pennsylvania Unfair Trade and Practices and Consumer Protection Law, 73 P.S. §201-1 *et seq*.

105.    The foregoing acts and omissions of Defendant constitute numerous and multiple violations of the TRA.

106.    As a result of Defendant's violations of the TRA, Plaintiff and the PA TRA Class members are entitled an award of $100 in statutory damages, for each and every violation, pursuant to 73 P.S. §201-9.2(a).

107.    As a result of Defendant's violations of the TRA, Plaintiff and the PA TRA Class members were further damaged because Defendant willfully and/or knowingly violated the TRA. As such, Plaintiff and the TRA Class members are entitled to treble the damage amount as permitted under the statue for the willful or knowing violations under 73 §201-9.2(a).

108.    As a result of Defendant's violations of the TRA, Plaintiff and the PA TRA Class members are also entitled to reasonable attorneys' fees and costs under 73 §201-9.2(a).

### COUNT VI
### Violation of the Pennsylvania Telemarketer Registration Act
### *(On Behalf of the PA TRA Class)*

109.    Plaintiff incorporates by reference all of the above paragraphs of his Complaint as though fully stated herein.

110.    As alleged with specificity herein, Defendant initiated certain outbound telephone calls to Plaintiff and failed to promptly disclose during the initial telephone contact the name of the telemarketer.

111.    As such, the Defendant violated the Pennsylvania Telemarketer Registration Act, 73 P.S. §§2241 - 2249 ("TRA").

112.    Specifically, Defendant violated §2245(a)(5).

113.    Under §2246, a violation of the TRA is also a violation of the Pennsylvania Unfair Trade and Practices and Consumer Protection Law, 73 P.S. §201-1 et seq.

114.    The foregoing acts and omissions of Defendant constitute numerous and multiple violations of the TRA.

115.    As a result of Defendant's violations of the TRA, Plaintiff and the PA TRA Class members are entitled an award of $100 in statutory damages, for each and every violation, pursuant to 73 P.S. §201-9.2(a).

116.    As a result of Defendant's violations of the TRA, Plaintiff and the PA TRA Class members were further damaged because Defendant willfully and/or knowingly violated the TRA. As such, Plaintiff and the TRA Class members are entitled to treble the damage amount as permitted under the statue for the willful or knowing violations under 73 §201-9.2(a).

117.    As a result of Defendant's violations of the TRA, Plaintiff and the PA TRA Class members are also entitled to reasonable attorneys' fees and costs under 73 §201-9.2(a)

### COUNT VII
### Violation of the Pennsylvania Telemarketer Registration Act
### *(On Behalf of the PA TRA Class)*

118.    Plaintiff incorporates by reference all of the above paragraphs of his Complaint as though fully stated herein.

119.    As alleged with specificity herein, Defendant engaged in several abusive telemarketing acts and practices that violated provisions of 16 CFR 310 (relating to telemarketing sales rule).

120.    Because these abusive telemarketing acts violated provisions of 16 CFR 310 (relating to telemarketing sales rule), the Defendant violated §2245(a)(9) of the TRA.

121.    Under §2246, a violation of the TRA is also a violation of the Pennsylvania Unfair Trade and Practices and Consumer Protection Law, 73 P.S. §201-1 et seq.

122.     The foregoing acts and omissions of Defendant constitute numerous and multiple violations of the TRA.

123.     As a result of Defendant's violations of the TRA, Plaintiff and the PA TRA Class members are entitled an award of $100 in statutory damages, for each and every violation, pursuant to 73 P.S. §201-9.2(a).

124.     As a result of Defendant's violations of the TRA, Plaintiff and the PA TRA Class members were further damaged because Defendant willfully and/or knowingly violated the TRA. As such, Plaintiff and the TRA Class members are entitled to treble the damage amount as permitted under the statue for the willful or knowing violations under 73 §201-9.2(a).

125.     As a result of Defendant's violations of the TRA, Plaintiff and the PA TRA Class members are also entitled to reasonable attorneys' fees and costs under 73 §201-9.2(a)

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on Plaintiff's own behalf and on behalf of the Class members, respectfully pray for the following relief:

a.     On the First Count for Negligent Violations of the TCPA, 47 U.S.C. §227(b)(1), Plaintiff seeks for himself and each Class member: (i) $500 in statutory damages, for each and every violation, pursuant to 47 U.S.C.  227(b)(3)(B) as a result of Defendant's negligent violations of 47 U.S.C. § 227(b)(1); (ii) injunctive relief prohibiting such conduct in the future pursuant to 47 U.S.C. § 227(b)(3)(A); and (iii) any and all other relief that the Court deems just and proper; and

b.     On the Second Count for Knowing and/or Willful Violations of the TCPA, 47 U.S.C. §227(b)(1), Plaintiff seeks for himself and the Class members: (i) treble damages, as provided by statute, up to $1,500, for each and every violation, pursuant to 47 U.S.C. §227(b)(3)(B) and 47 U.S.C. §227(b)(3)(C) as a result of Defendant's willful and/or

knowing violations of 47 U.S.C. § 227 (b)(1); injunctive relief prohibiting such conduct in the future pursuant to 47 U.S.C. § 227(b)(3)(A); and (iii) any and all other relief that the Court deems just and proper; and

c.     On the Third Count for Violations of the TCPA, 47 U.S.C. § 227(c)(5), Plaintiff seeks for himself and the Class members: (i) up to $1500 in statutory damages, for each and every violation, pursuant to 47 U.S.C.  227(c)(5) as a result of Defendant's violations of 47 U.S.C. § 227(b)(1); (ii) injunctive relief prohibiting such conduct in the future pursuant to 47 U.S.C. § 227(b)(3)(A); and (iii) any and all other relief that the Court deems just and proper; and

d.     On the Fourth Count for Violations of the TCPA, 47 U.S.C. §227(c)(5), Plaintiff seeks for himself and the Class members: (i) up to $1500 in statutory damages, for each and every violation, pursuant to 47 U.S.C. §227(c)(5) as a result of Defendant's violations of 47 U.S.C. § 227(b)(1); (ii) injunctive relief prohibiting such conduct in the future pursuant to 47 U.S.C. § 227(b)(3)(A); and (iii) any and all other relief that the Court deems just and proper; and

e.     On the Fifth Count for Violations of the TRA, Plaintiff seeks for himself and the Class members: (i) treble damages, as provided by statute, for each and every violation, pursuant to 73 P.S. §201-9.2(a); (ii) reasonable attorneys' fees and costs; and (iii) any and all other relief that the Court deems just and proper; and

f.     On the Sixth Count for Violations of the TRA, Plaintiff seeks for himself and the Class members: (i) treble damages, as provided by statute, for each and every violation, pursuant to 73 P.S. §201-9.2(a); (ii) reasonable attorneys' fees and costs; and (iii) any and all other relief that the Court deems just and proper; and

g.      On the Seventh Count for Violations of the TRA, Plaintiff seeks for himself and the Class members: (i) treble damages, as provided by statute, for each and every violation, pursuant to 73 P.S. §201-9.2(a); (ii) reasonable attorneys' fees and costs; and (iii) any and all other relief that the Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff, on behalf of herself and all others similarly situated, demands a trial by jury on all questions of fact raised by the complaint.

Dated: New York, New York
            January 18, 2022

                                        **KAZEROUNI LAW GROUP, A.P.C.**

                           By:     *s/ Ross H. Schmierer*
                                        Ross H. Schmierer, Esq.
                                        48 Wall Street, Suite 1100
                                        New York, NY 10005
                                        Phone: (800) 400-6808
                                        Fax: (800) 520-5523
                                        ross@kazlg.com

                                        *Attorneys for Plaintiff*